OELRICH v. PITTSBURGH. See Case No. 10,444.

---

# Case No. 10,443.

## OELRICH v. BARNEY.

Circuit Court, S. D. New York. Jan. 18, 1886.

---

# Case No. 10,444.

## OELRICH et al. v. PITTSBURGH.

[17 Leg. Int. 4;[1] 3 West. Law Month. 14; 2 Pittsb. Rep. 93; 7 Pittsb. Leg. J. 81, 249.]

Circuit Court, W. D. Pennsylvania. Sept. 20, 1859.

### MUNICIPAL CORPORATIONS—EXECUTION.

Stock owned by a municipal corporation, may be taken in execution and sold under a fi. fa. issued out of circuit courts of United States.

At a recent session of the United States court, this suit, brought against the mayor, aldermen, and citizens of Pittsburgh, was for the interest on city bonds. The plaintiff obtained judgment in the suit for two thousand dollars, and an execution was issued to the marshal. [Case No. 10,442.] The marshal seized upon city gas stock, and threatened to sell it to satisfy the claim. An application was made to Judge M'Candless, to set the levy aside as alleged.

Judge Shaler, for plaintiffs.
Thomas Williams, for defendant.

M'CANDLESS, District Judge. This case was tried at the late term of the circuit court, a verdict rendered in favor of the plaintiffs, and judgment entered on the 23d of May last. Defendants having failed to file their writ of error, issue their citations, give bail, and remove their case to the supreme court of the United States, plaintiffs sued out a fieri facias on the second day of September, and levied on six hundred and fifty-six shares of the capital stock of the Pittsburgh Gas Company, owned by defendants and held in their names on the books of the corporation. An application was made to this court to set aside the execution and the levy, upon the ground that the writ of fieri facias is not the proper remedy and will not lie against a municipal corporation; and that under the law of the state recognized in this court, the process of fieri facias is not the proper one for the seizure and sale of the corporation stock held by the defendants.

This court is impressed with the gravity of the questions presented, and has given to them the consideration which their importance demands.

1. It is contended that the act of the 15th of April, 1784, creating counties and townships bodies corporate, is applicable to cities and boroughs, and that the plaintiffs are limited to the remedy provided in that act. We think not; cities are no where mentioned, except when embraced within a county, and it is declared that they shall form a constituent part of it, reserving to them all the franchises conferred by their respective charters. They were independent bodies politic, capable in law of suing and being sued, and of holding real and personal estate. They were not merged in the counties, and being already corporate bodies, having all the immunities and subject to all liabilities as such, there was no legal necessity for the application of the law to them. Counties, on the contrary, were nondescript bodies, called by the courts, before the passage of the act, quasi corporations, against which the creditor had but an imperfect remedy. They were represented by commissioners, as they are now, but with limited and undefined duties and responsibilities. 10 Serg. & R. 290. It was to remedy this defect that the law was passed. Rep. Comm. Civ. Code, Jan. 4, '89, p. 5. It would be manifestly impracticable to execute the act of '84 as to cities. Upon whom would you serve the writ, which

---

[1] [Reprinted from 17 Leg. Int. 4, by permission.]

commands the commissioners to pay the judgment out of any unappropriated moneys, or if none, out of the first money that may come into the treasury? Upon the mayor, who represents the general police of the municipality? Upon the controller, treasurer or finance committee, who may have the custody of the public funds, or upon the select and common councils, the legislative body of the city? The act is silent as to cities. There is no provision rendering the corporation officers amenable to the law for this neglect of duty. And when it is remembered that disobedience to the writ is followed by attachment and imprisonment for contempt, and a suspension of the functions of all these public officers, so indispensable to the good order and welfare of the city, there must be some positive enactment, something more than a doubtful construction of an act relating to a different body politic, before this court will apply such a remedy. It would not be equivalent to the issue of a high prerogative writ, resulting in similar consequences, the assumption and exercise of an extraordinary power not expressly given by statute.

It has been urged that inasmuch as municipal corporations are clothed with some attributes of sovereignty, as, for instance, the taxing power, they should not be subject to the exigencies of a writ of execution in the hands of a marshal. But the sovereignty delegated is at least of a bastard nature. Like a fee, the highest estate in realty, when coupled with a qualification, it is denominated a base fee. The corporation is limited and contracted in its powers, which is repugnant to all our conceptions of sovereignty. We now approach the second point submitted.

2. In the early period of the English law, goods and chattels, or those which are visible or tangible, constituted the great mass of personal property, though the value of them bore no proportion to that of real estate. Bonds, stocks, and other evidences of debt were little known or regarded in the law, and upon writs of fieri facias, the sheriff took only that which could be sold for money. Such was the law of Pennsylvania until alterations made by the act of assembly, passed in 1817, in case of execution against a corporation, authorizing the levy upon current coin of gold, silver, and copper, if other personal property could not be found; and by the act of 1819, which provided that the stock of any body corporate owned by any individual or individuals, body or bodies politic or corporate, in his, her, its or their own name or names, shall be liable to be taken in execution and sold, in the same manner that goods and chattels are liable in law to be taken and sold. Still much remained to be done to give creditors the full benefit of the property of their debtors. The commissioners to revise the Civil Code recommended an execution to be levied on bonds, mortgages, credits, &c., as well as upon stocks of incorporated companies. Report, '35. This was followed by the act of 1836, directing the mode of levying upon stocks by attachment and scire facias, and by another act of the same year, regulating the levy of executions against corporations, followed by sequestration.

Municipal corporations are exempt from the operation of both these acts, and it is admitted with great candor by the learned counsel for the defendant that they are foreign to the case before the court. He contends, further, that although these acts afford no remedy against a municipal corporation, they are part of a general system, which repeals and supplies all former laws. To this it may be replied, that the act of 1836 contains no repealing clause, and the commissioners of the code themselves in their report of January 15, '36, do not treat it so, but say, "in this bill are proposed some important additions to the law." Besides, the supreme court of Pennsylvania had this very question before them in the case of Lex v. Potters, 4 Harris [16 Pa. St.] 295, and decided that the second section of the act of 1819, above quoted, is not repealed by the act of June, 1836. In this opinion this court concurs.

It becomes us here to inquire how the practice in the courts of the United States is affected by this state of the law in Pennsylvania. State laws cannot control the exercise of the powers of the national government, or in any manner limit or affect the operation of the process or proceedings of the national courts. The whole efficacy of such laws in the courts of the United States depends upon the enactments of congress. So far as they are adopted by congress, they are obligatory. Beyond this they have no controlling influence. Congress may adopt such state laws directly by substantive enactments, or they may confide the authority to adopt them to the courts of the United States. [Beers v. Haughton] 9 Pet. [34 U. S.] 359. Examples of both sorts exist in the national legislature. The process act of 1789, c. 21 [1 Stat. 93], expressly adopted the forms and modes of process of the state courts in suits at common law. The act of 1792 [Id. 275], permanently continued the forms of writs, executions, and other processes then in use in the courts of the United States, under the act of '89, but with this remarkable difference, that they were subject to such alterations and additions as the said courts should, in their discretion, deem expedient. The constitutional validity and extent of the power thus given to the courts of the United States, was fully considered by the supreme court of the United States, in the cases reported in [Wayman v. Southard] 10 Wheat. [23 U. S.] 1, and [Bank of U. S. v. Halstead] Id. 51. It was there held that this delegation of power by congress was perfectly constitutional; that the power

to alter and add to the process and modes of proceedings in a suit, embraced the whole progress of such suit, and every transaction in it from its commencement to its termination, and until the judgment should be satisfied, and that it authorized the courts to prescribe and regulate the conduct of the officer in the execution of the final process, in giving effect to its judgments. [Bank of U. S. v. Waggener] 9 Pet. [34 U. S.] 399. But the present case does not depend simply upon the acts of '89 and '92, but is directly within and governed by the process act of 19th May, 1828, c. 68 [4 Stat. 278]. The third section declares that writs of execution and other final process, issued on judgments and decrees rendered in any courts of the United States, and "the proceedings thereupon," shall be the same in each state respectively, as are now used in the courts of such state. Provided, however, that it shall be in the power of the courts, if they see fit, in their discretion, by rules of courts so far to alter final process in such courts, as to conform the same to any change which may be adopted by the legislature of the respective state, for the state courts.

It results, then, that the forms of execution (except their style) from the courts of the United States, their force and effect, and the duty of the marshals in levying, advertising, and selling, are to be ascertained by reference to the laws of the respective states, as they were on the 19th May, 1828, except where the judges by rules of courts have changed the same. Conk. 464. This course was no doubt adopted, as one better calculated to meet the views and wishes of the several states than for congress to have framed an entire system for the courts of the United States varying from that of the state courts. They had in view, however, state systems then in actual operation, well known and understood, and the propriety and expediency of adopting which, they could well judge and determine. Hence, the resolution in the act now used and allowed in the several states. There is no part of the act, however, that looks like adopting prospectively by positive legislative provisions, the various changes that might thereafter be made in the state courts. Had such been the intention of congress, the phraseology of the act would doubtless have been adapted to that purpose. It was, nevertheless, foreseen that changes probably would be made in the process and proceedings in the state courts, which might be fit and proper to be adopted in the courts of the United States; and not choosing to sanction such changes absolutely in anticipation, power is given to the courts over the subject, with a view, no doubt, so to alter and mould their processes and proceedings as to conform to those of the state courts as nearly as might be, consistently with the ends of justice. The general policy of all the laws on this subject is very apparent. It was intended to adopt and conform to the state process and proceedings, as a general rule, but under such guards and checks as might be necessary to insure the due exercise of the powers of the courts of the United States. [Bank of U. S. v. Halstead] 10 Wheat. [23 U. S.] 60. What, then, was the law of Pennsylvania at the date of the passage of this act of congress, on the 19th of May, 1828? Undeniably the act of 1819 was in full force, and it authorized the stock of any body corporate, owned by bodies politic, like the city of Pittsburgh, to be taken in execution under a fieri facias, and sold in the same manner as goods and chattel. The act of 1834, relative to counties and townships, was not then in existence. It has never been adopted by rule of court, as part of the final process of this court, and with the view we have expressed of its provisions, it cannot be as applicable to cities. The sequence to this opinion is that the fieri facias issued in the present case is legal and proper; that the levy upon the stock held by the city of Pittsburgh, in the Pittsburgh Gas Works, has been regularly made; that we must refuse the motion to set them aside; and that the marshal must proceed with the execution of his writ.

Motion refused.

[See Parke v. Pittsburgh, 1 Pittsb. 218.] [2]